UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

—————————————————————

MATTHEW VARNEY )
)
)
Plaintiff, )
)
v. )
)
WHEELABRATOR HUDSON )
FALLS L.L.C; WHEELABRATOR )
ENVIRONMENTAL SYSTEMS INC.; and )
WIN WASTE )
INNOVATIONS OF NORTHERN NEW )
ENGLAND INC. )
)
Defendant. )
—————————————————————

Civil Action No.
 1:25-cv-1052 (ECC/PJE)

## COMPLAINT AND JURY DEMAND

## PARTIES

1.      The Plaintiff, Matthew Varney ("Mr. Varney" or the "Plaintiff"), is an adult male

resident of the state of New York, residing in Comstock, New York 12821. Comstock, NY is in

Washington County.

2.      Defendant Wheelabrator Hudson Falls L.L.C. ("Wheelabrator Hudson" or "WH")

is a domestic for-profit corporation doing business in the state of New York. WH is incorporated

in New York and its principal office is located at 61 River Street, Hudson Falls, NY, 12839.

Hudson Falls is in Washington County.

3.      Defendant Wheelabrator Environmental Systems Inc. ("Wheelabrator

Environmental Systems" or "WES") is a domestic for-profit corporation doing business in the

state of New York. WES is incorporated in Delaware and its principal office is located at 4

Liberty Lane W, Hampton, NH, 03842. Hampton is in Rockingham County.

4.       Defendant Win Waste Innovations of Northern New England Inc. ("Win Waste NNE") is a for-profit corporation doing business in the state of New York.  Win Waste NNE is incorporated in Delaware and its principal office is located at 90 Arboretum Drive, Suite 300, Newington, NH 03801. Newington is in Rockingham County.

## JURISDICTION AND VENUE

5.       This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought a claim pursuant to the Americans with Disabilities Act, 42 U.S.C. §§12101, and the Family and Medical Leave Act, 29. U.S.C. §2601 *et seq.* The court may exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

6.       Venue is appropriate in the Northern District of New York as the acts or omissions giving rise to the claims in this Complaint occurred in the Northern District of New York.

7.       This court has personal jurisdiction over WH because WH is a resident of the State of New York, including because WH is incorporated in New York and/or its principal office is located in New York.

8.       Furthermore, this Court has specific personal jurisdiction over WH because WH has engaged in and transacted business in the State of New York, including by managing and/or operating a business in New York and/or employing employees (including Mr. Varney) in New York, and Mr. Varney's causes of action stem from WH's business transactions within the State of New York.  Indeed, Mr. Varney was employed by WH in the State of New York, was managed and supervised by WH in New York, was discriminated against and harassed by WH in New York and was terminated by WH in New York.

9.       This Court has specific personal jurisdiction over WES because WES has engaged in and transacted business in the State of New York, including by managing and/or

operating a business in New York and/or employing Mr. Varney in New York, and Mr. Varney's causes of action stem from WES's business transactions within the State of New York. Indeed, Mr. Varney was employed by WES in New York, was managed and supervised by WES in New York, was discriminated against and harassed by WES in New York and was terminated by WES in New York.

10.     This Court has specific personal jurisdiction over Win Waste NNE because Win Waste NNE has engaged in and transacted business in the State of New York, including by managing and/or operating a business in New York and/or employing Mr. Varney in New York, and Mr. Varney's causes of action stem from Win Waste NNE's business transactions within the State of New York. Indeed, Mr. Varney was employed by Win Waste NNE in New York, was managed and supervised by Win Waste NNE in New York, was discriminated against and harassed by Win Waste NNE in New York and was terminated by Win Waste NNE in New York.

## STATEMENT OF FACTS

11.     In or around June 2018, Mr. Varney was hired by WH as a laborer in a facility in Hudson Falls, New York operated by WH.

12.     At all relevant times, WH was a wholly owned subsidiary of WES, and WES was a wholly owned subsidiary of Win Waste NNE. Each of WH, WES, and Win Waste Inc. exercised control over Mr. Varney's employment, including making decisions relating to the terms and conditions of his employment (including, but not limited to, decisions related to hiring, salary and/or rate of pay, discipline, and/or termination).

13.     Indeed, WH, WES, and Win Waste NNE all exercised significant control over Mr. Varney's employment, including, but not limited to, by instituting policies and practices

related to his employment, handling human resources functions, issuing and handling pay, and making decisions related to Mr. Varney's compensation and employment status.

14.     Moreover, WH, WES, and Win Waste NNE employees managed, directed, and supervised Mr. Varney during his employment.

15.     Importantly, upon information and belief, WH, WES, and Waste Win NNE had the same management structure, had significant interrelation between operations, had significant centralized control of labor relations, and a significant degree of common ownership/financial control.

16.     At all relevant times, WH, WES, and Win Waste NNE (individually and collectively) shared management, control over operations, supervisory authority, and the power to hire or fire Mr. Varney.

17.     Based on the shared management and responsibility over the essential terms and conditions of Mr. Varney's employment, WH, WES, and Win Waste NNE were, at all relevant times, joint employers of Mr. Varney and Mr. Varney was jointly employed by WH, WES, and Win Waste NNE.

18.     At all relevant times, the Company (including WH, WES, and Win Waste NNE individually and collectively) employed 15 or more employees for 20 or more weeks during the current or preceding calendar year.

19.     Accordingly, at all relevant times, the Company (including WH, WES, and Win Waste NNE individually and collectively) was an employer under the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law.

20.     At all relevant times, the Company (including WH, WES, and Win Waste NNE individually and collectively) employed 50 or more employees for 20 or more weeks during the preceding calendar year.

21.     Accordingly, at all relevant times, the Company (including WH, WES, and Win Waste NNE individually and collectively) was an employer under the Family and Medical Leave Act ("FMLA").

22.     In addition, at all relevant times, WH, WES, and Win Waste NNE were integrated employers as defined by the FMLA.

23.     Indeed, WH, WES, and Win Waste NNE share common management, have interrelated operations, centralized control of labor relations, and common ownership.  Indeed, WH was at all relevant times a wholly owned subsidiary of WES, which was itself a wholly owned subsidiary of Win Waste NNE.

24.     At all relevant times, Mr. Varney was a qualified employee, and his job performance was satisfactory.

25.     Indeed, due to Mr. Varney's strong performance, he was promoted to Assistant Plant Operator in or around the end of 2021.

26.     As Assistant Plant Operator, Mr. Varney's job required him to move throughout the Company's waste to energy plant (in which garbage is burned to produce electricity).

27.     On or around September 10, 2023, while Mr. Varney was working, he used a steel poker bar to unclog the expeller, which was standard operating procedure at the Company.

28.     Notably, the light on the belt was green, indicating that it was safe to use the steel poker.

29.     It was standard practice and procedure to use the steel poker in such a circumstance.

30.     Indeed, there were annual trainings on the standard policy of using the poker, which maintained that the poker was used on a daily basis to clear trash build-ups in the expeller.

31.     However, while Mr. Varney was using the poker, the Plant Operator on duty, Seth Baker ("Baker") negligently restarted the grates, causing debris to fall on the poker, which then swung up and struck Mr. Varney in the jaw, shattering his jaw in the process and causing contusions on his face, as well as blood loss.

32.     Notably, Baker is non-disabled and is not regarded by the Company as disabled. Further, Baker has not utilized protected leave, nor has he applied for Workers Compensation benefits.

33.     The poker struck Mr. Varney with such intensity that it temporarily knocked him unconscious.

34.     After Mr. Varney was struck, Tom Toole ("Toole"), a supervisor, brought him to the Company first aid station, where Mr. Varney received basic first aid.  Following this, Mr. Varney was driven to the hospital by Bob Brines ("Brines").

35.     At the hospital, an MRI confirmed that Mr. Varney had sustained serious injuries to his face, including a shattered jawbone, breaks in both of his cheek bones, and a large gash in his mouth and on his forehead where the poker struck him (individually and collectively his "chronic maxillofacial condition").

36.     Mr. Varney's doctor informed him that his jaw needed to be wired shut and that he would require extensive reconstructive surgery.  Mr. Varney's doctor likewise informed Mr. Varney he would likely have long-term symptoms of pain, stiffness, and limited range of jaw motion, which would limit his ability to use his jaw, including his ability to eat and talk normally.

37.     Mr. Varney's doctor told him that the soonest possible surgery date was on or around September 19, 2023.

38.     Mr. Varney's chronic maxillofacial condition (which required reconstructive surgery and had long-term effects), is an impairment which, at all relevant times from September 2023 through the present, significantly limited one or more of his major life activities, including, but not limited to, his ability to eat, drink, and speak. Additionally, Mr. Varney's chronic maxillofacial condition (which required reconstructive surgery) is an impairment which significantly limits one or more of his major bodily functions, including his digestive, craniofacial, and skeletal system functions.

39.     Accordingly, at all relevant time, Mr. Varney's chronic maxillofacial condition was a disability under state and federal law.

40.     On or around September 11, 2023, Mr. Varney contacted Maurice Holcomb ("Holcomb"), the Plant Manager for the Company, and formally disclosed his disability diagnosis and the date of his reconstructive surgery.

41.     At this time, Mr. Varney applied for and received Workers Compensation benefits.  The application contained information about the unsafe working conditions at the Company and as such, further constituted a report of unsafe working conditions that violated applicable laws and rules.

42.     Importantly, Holcomb's demeanor towards Mr. Varney changed following his Workers Compensation application. Indeed, Holcomb was previously friendly towards Mr. Varney; however, he became cold towards Mr. Varney and frequently appeared agitated with Mr. Varney following Mr. Varney's Workers Compensation application.

43.     It was apparent that Holcomb held a discriminatory and retaliatory animus towards Mr. Varney due to his disability, his utilization of accommodations, and his application for Workers Compensation.

44.     At or around this time, Mr. Varney also requested the reasonable disability-related accommodation of taking a medical leave from work until on or around October 24, 2023, so that he could undergo and recover from his surgery.

45.     Notably, at this time and at all relevant times, the Company employed 50 or more employees within a 75-mile radius of Mr. Varney's worksite.

46.     Additionally, at this time and at all relevant times, Mr. Varney had worked for the Company for over one year and had worked at least 1250 hours during the preceding calendar year.

47.     Mr. Varney's chronic maxillofacial condition, and related reconstructive surgery, was a serious health condition requiring continuing treatment and thus served as a legitimate basis for leave protected by the FMLA.

48.     As such, Mr. Varney's request for a disability-related reasonable accommodation was also a request for leave protected under the FMLA.

49.     Holcomb approved Mr. Varney's request, and Mr. Varney went on leave.

50.     Mr. Varney's leave was approved, and classified by the Company as FMLA protected leave.

51.     On or around October 17, 2023, Mr. Varney contacted Holcomb, and asked for his schedule for the upcoming week when he was returning from leave (on or around October 24, 2023).

52.     Holcomb strangely discouraged Mr. Varney from returning to work (as planned).

53.     In response, Mr. Varney conveyed protected concerns that he was being prevented from returning to work in a seemingly retaliatory manner, and explained to Holcomb that he was ready, willing, and able to return to work on the previously scheduled date of on or around October 24, 2023.

54.     Holcomb demanded that Mr. Varney supply a doctor's note, which Mr. Varney promptly did.

55.     After Mr. Varney supplied the note, Holcomb told Mr. Varney to come to the Company's plant on or around October 24, 2023, but emphasized that Mr. Varney needed to speak with him and maintenance manager, Mike Morgan ("Morgan") prior to clocking in.

56.     Although Mr. Varney was cleared to return to work by his doctor, he continued to suffer from disability-related symptoms of pain in his face, as well as inflammation and stiffness in his jaw.

57.     Indeed, the chronic pain from Mr. Varney's chronic maxillofacial condition was (and remains) sometimes so severe that it limits his ability to eat among other effects, which has led to significant weight loss. As such, despite Mr. Varney's reconstructive surgery, Mr. Varney remains disabled under the ADA and New York State law.

58.     Mr. Varney attempted to return to work on or around October 24, 2023 as planned.

59.     However, prior to clocking in and being able to return to work, Mr. Varney was summoned into a meeting with Holcomb and Morgan.

60.     During this meeting, Mr. Varney again conveyed protected concerns that he was being retaliated against.

61.     However, Holcomb and Morgan ignored Mr. Varney's concerns and instead claimed that Mr. Varney was being terminated for allegedly failing to wear PPE (a face shield and a raincoat) when he sustained his injury.

62.     Importantly, Mr. Varney's previous disability-related accommodation request to take medical leave and return to his position was retroactively denied.

63.    Indeed, the Company had no legitimate intention of restoring Mr. Varney to his position.

64.    The Company failed to perform a thorough investigation.

65.    Indeed, Mr. Varney was, in fact, wearing PPE at the time he sustained his injury.

66.    Despite Mr. Varney's compliance with safety policy, the Company fostered an environment where it was regular practice for employees to utilize the steel poker without waring PPE.

67.    Indeed, many employees worked daily without wearing PPE, which was known by the Company.

68.    Moreover, Baker, who negligently restarted the grates while Mr. Varney was using the poker, was not similarly terminated for his failure to follow safety procedures, despite the fact that he had committed misconduct and failed to follow proper rules and procedures.

69.    Importantly, the Baker was not similarly terminated because he is non-disabled, is not regarded by the Company as disabled, has not utilized protected leave, and has not applied for and received Workers Compensation benefits.

70.    Moreover, Larry Simpson ("Simpson") was previously caught working without using his safety equipment. However, Simpson, who is non-disabled, has not utilized protected leave, and has not applied for Workers Compensation benefits was also not terminated.

71.    Accordingly, the Company failed to reinstate Mr. Varney and Mr. Varney was involuntarily terminated from his employment on or around October 24, 2023.

72.    On or around May 6, 2024, Mr. Varney timely filed a Charge of Discrimination (the "Charge") with the New York Division on Human Rights (the "NYDHR") (Charge Number: 10236488) and cross-filed with the Equal Employment Opportunity Commission (the "EEOC") (Charge Number: 16GC404278).

73.     On or around February 7, 2025, Mr. Varney notified the NYDHR of his intent to pursue this matter in Court and requested an administrative convenience dismissal.

74.     On or around April 9, 2025, the NYDHR issued an administrative convenience dismissal permitting Mr. Varney to proceed in court.

75.     On or around August 4, 2025, the EEOC issued Mr. Varney with a right to sue letter.

76.     This lawsuit is timely filed.

## COUNT I

**(Interference with, and Retaliation for Exercising, Rights under, the Family and Medical Leave Act – 29 U.S.C. §2615)**

**Plaintiff v. All Defendants (Wheelabrator Hudson, Wheelabrator Environmental Systems, and Win Waste NNE)**

159.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

160.     Importantly, at all relevant times, WH, WES, and Win Waste NNE jointly employed Mr. Varney.

161.     At all relevant times, WH, WES, and Win Waste NNE were integrated employers as defined by the FMLA.  Indeed, the companies had common management (including the same CEO), interrelated operations, centralized control of labor relations, and had common ownership.

162.     During all relevant times, the Company (including each of WH, WES, and Win Waste NNE) was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

163.     As such, at all relevant times, the Company was an employer under the FMLA.

164. At all relevant times, the Company employed 50 or more employees within 75 miles of Mr. Varney's worksite.

165. At all relevant times (from at least July 2018 onward), Mr. Varney had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

166. As such, from June 2018 onward, Mr. Varney was an eligible employee under the FMLA.

167. Mr. Varney suffered from one or more serious health conditions for which he received continuing care, including, but not limited to, his chronic maxillofacial condition (which required reconstructive surgery).

168. Mr. Varney was eligible for, and entitled to, FMLA leave from September to October 2023.

169. Mr. Varney sought to exercise his rights under the FMLA, including by requesting and utilizing one or more protected leaves under the FMLA.

170. Mr. Varney timely notified the Company that he needed leave for an FMLA-qualifying reason and this constituted a request for leave covered by the FMLA.

171. Upon information and belief, the Company approved Mr. Varney's leave as covered by the FMLA and classified the leave as FMLA leave in its records.

172. The Company (including each of the Defendants), by and through their agents, interfered with Mr. Varney's rights under the FMLA, including but not limited to, by using Mr. Varney's FMLA protected leave as a negative factor in evaluating Mr. Varney's employment, and/or by denying and/or retroactively revoking Mr. Varney's requests for FMLA leave. Additionally, the Company interfered with Mr. Varney's protected FMLA right of restoration by

failing to restore him to his position and terminating his employment when he attempted to return to work and be restored to his position.

173.    The Defendants, including by and through their agents, retaliated and/or discriminated against Mr. Varney for requesting and/or utilizing FMLA leave, and for seeking job restoration at the end of his FMLA-protected leave, by subjecting Mr. Varney to adverse actions, including, but not limited to, terminating Mr. Varney's employment.

174.    The Defendants' actions were willful and undertaken in bad faith.

175.    As a direct and proximate result of the Defendants' violation of the FMLA, Mr. Varney has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

176.    Mr. Varney seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

## COUNT II

**(Disability Discrimination and Failure to Accommodate in Violation of the Americans With Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. Wheelabrator Hudson**

177.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

178.    At all relevant times, the Company employed 15 or more employees for 20 or more weeks during the preceding 12 calendar months.

179.    As such, at all relevant times, the Company was an employer under the Americans with Disabilities Act ("ADA").

180.    Mr. Varney's chronic maxillofacial condition (which required reconstructive surgery and had long-term effects), is an impairment which, at all relevant times from September 2023 through the present, significantly limited one or more of his major life activities, including, but not limited to, his ability to eat, drink, and speak. Additionally, Mr. Varney's chronic maxillofacial condition (which required reconstructive surgery) is an impairment which significantly limits one or more of his major bodily functions, including his digestive, craniofacial, and skeletal system functions.

181.    Accordingly, at all relevant time, Mr. Varney's chronic maxillofacial condition was a disability under the ADA.

182.    At all relevant times, Mr. Varney was a qualified individual with a disability and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.  Indeed, Mr. Varney performed his job at a satisfactory level throughout his employment.

183.    Mr. Varney disclosed his disabilities to the Defendants and/or the Defendants were aware of Mr. Varney's disabilities and/or the Company regarded Mr. Varney as disabled.

184.    Mr. Varney requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included a continuous six week leave to undergo medically necessary reconstructive surgery and to recover, as well as being restored to his position at the end of this leave.

185.    The Company, by and through its agents, discriminated against Mr. Varney due to his disability(ies) by subjecting Mr. Varney to adverse actions, including, but not limited to, terminating Mr. Varney's employment.

186.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Varney.

187.    As a direct and proximate result of the Company's violation of the ADA, Mr. Varney has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

188.    Mr. Varney seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, restoration of his employment with full seniority and benefits, attorneys' fees, interest, and costs.

## COUNT III

**(Disability Discrimination and Failure to Accommodate under New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Plaintiff v. All Defendants (Wheelabrator Hudson, Wheelabrator Environmental Systems, and Win Waste NNE)**

189.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

190.    At all relevant times, the Company employed 15 or more employees for 20 or more weeks during the preceding 12 calendar months.

191.    As such, at all relevant times, the Company was an employer under the New York State Human Rights Law.

192.    At all relevant times, Mr. Varney's chronic maxillofacial condition was an impairment that substantially limited one or more of his major life activities, including, but not limited to, his ability to eat, drink, and speak.  In addition, Mr. Varney's chronic maxillofacial condition substantially impaired one or more of his major bodily functions, including, but not limited to, his digestive and skeletal system functions. As such, Mr. Mr. Varney's chronic maxillofacial condition was and is a disability under NY state law.

193.    At all relevant times, Mr. Varney was a qualified individual with a disability and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.  Indeed, Mr. Varney performed his job at a satisfactory level throughout his employment.

194.    Mr. Varney disclosed his disabilities to the Defendants and/or the Defendants were aware of Mr. Varney's disabilities and/or the Company regarded Mr. Varney as disabled.

195.    The Company, by and through its agents, discriminated against Mr. Varney due to his disability(ies) by subjecting Mr. Varney to adverse actions, including, but not limited to, subjecting Mr. Varney to a harassing and hostile work environment and terminating Mr. Varney's employment.

196.    The Company acted with malice and/or with reckless indifference to the state protected rights of Mr. Varney.

197.    As a direct and proximate result of the Company's violation of New York law, Mr. Varney has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

198.    Mr. Varney seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, emotional distress damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, restoration of his employment, attorneys' fees, interest, and costs.

## COUNT IV

## (Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)

## Plaintiff v.  Wheelabrator Hudson

199.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

200.    At all relevant times, the Company employed 15 or more employees for 20 or more weeks during the preceding 12 calendar months.

201.    As such, at all relevant times, the Company was an employer under the Americans with Disabilities Act ("ADA").

202.    Mr. Varney engaged in protected activity under the ADA, including, but not limited to, by (i) opposing, voicing protected concerns about, and/or engaging in other protected activity regarding a hostile work environment and other discriminatory conduct based on his disability, (ii) requesting and/or utilizing reasonable accommodations for disability(ies) which were intended to allow Mr. Varney to perform the essential functions of his job, and/or (iii)

opposing the denial (or retroactive revocation of) reasonable accommodations requested for his disability.

203.    The Company retaliated against Mr. Varney for engaging in activity protected under the ADA, by subjecting him to adverse actions, including, but not limited to, subjecting Mr. Varney to a harassing and hostile work environment and terminating Mr. Varney's employment.

204.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Varney's exercising of, or enjoyment of, one or more rights granted by the ADA.

205.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Varney.

206.    As a direct and proximate result of the Company's violation of the ADA, Mr. Varney suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

207.    Mr. Varney seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, restoration of his employment with full seniority and benefits, attorneys' fees, interest, and costs.

## COUNT V

**(Retaliation for Engaging in Protected Activity in Violation of New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Plaintiff v. All Defendants (Wheelabrator Hudson, Wheelabrator Environmental Systems, and Win Waste NNE)**

208.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

209.    At all relevant times, the Company employed 4 or more employees.

210.    As such, at all relevant times, the Company (including each of the Defendants individually) was an employer under the New York State Human Rights Law.

211.    Mr. Varney engaged in protected activity under New York state law, including, but not limited to, by (i) opposing, voicing protected concerns, and/or engaging in other protected activity regarding a hostile work environment, discrimination, and retaliation based on his disability (and utilization of disability accommodations), (ii) requesting and/or utilizing reasonable accommodations for disability(ies) which were intended to allow Mr. Varney to perform the essential functions of his job, and/or (iii) opposing the denial (or retroactive revocation of) reasonable accommodations requested for his disability.

212.    The Company retaliated against Mr. Varney for engaging in activity protected under New York State law, by subjecting him to adverse actions, including, but not limited to, subjecting Mr. Varney to a harassing and hostile work environment and terminating Mr. Varney's employment.

213.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Varney's exercising of, or enjoyment of, one or more rights granted by New York state law.

214.    The Company acted with malice and/or with reckless indifference to the state protected rights of Mr. Varney.

215.    As a direct and proximate result of the Company's violation of New York State law, Mr. Varney suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

216.    Mr. Varney seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, emotional distress damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, restoration of his employment, attorneys' fees, interest, and costs.

## COUNT VI

### (Whistleblower Retaliation – N.Y. Lab. Law § 215)

### Plaintiff v. All Defendants (Wheelabrator Hudson, Wheelabrator Environmental Systems, and Win Waste NNE)

217.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

218.    At all relevant times, the Company was an employer under the definitions of the New York Labor Laws, including N.Y. Lab. Law § 215.

219.    Mr. Varney engaged in protected activity under N.Y. Lab. Law § 215, including by utilizing leave protected under state and/or federal law and/or by raising protected concerns regarding the Company's denial of, and retaliation for, Mr. Varney's use of protected time off and effort to be restored to his position at the end of that protected leave.

220.    The Company retaliated against Mr. Varney for engaging in activity protected under N.Y. Lab. Law § 215, by subjecting him to adverse actions, including, but not limited to,

subjecting Mr. Varney to a harassing and hostile work environment, and/or terminating Mr. Varney's employment.

221.    As a direct and proximate result of the Company's violation of N.Y. Lab. Law § 215, Mr. Varney suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

222.    Mr. Varney seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, attorneys' fees, interest, and costs.

## COUNT VII

**(Retaliation In Violation of New York Whistleblower Law, NY Labor Law § 740)**

**Plaintiff v. All Defendants (WH, WES, AND Win Waste NNE)**

223.    Mr. Varney incorporates all paragraphs above and below as if set forth fully herein.

224.    Mr. Varney engaged in protected activity under New York Labor Law Section 740, including because he disclosed to a supervisor, or threatened to disclose, an activity, policy, or practice that he reasonably believed violated a law, rule, or regulation. Specifically, and by way of example and not limitation, he raised concerns about the failure of the Company to ensure proper safety protocol was practiced, which ultimately resulted in Mr. Varney's traumatic injury and subsequent diagnosis of a chronic maxillofacial condition when the Plant Operator

negligently restarted the grates while Ms. Varney was using the poker. Additionally, Mr. Varney raised protected concerns of wrongful retaliation based on his use of protected leave and because he received Workers Compensation benefits. Likewise, Mr. Varney's application for Workers Compensation benefits constituted a protected act under New York Labor Law Section 740.

225.    The Defendants retaliated against Mr. Varney with adverse actions, including, but not limited to, by subjecting him to a severe and pervasive hostile, harassing, and discriminatory work environment, denying Mr. Varney the benefit of sufficient progressive discipline prior to termination; and/or the termination of Mr. Varney's employment because he engaged in protected activities.

226.    The Defendants' actions against Mr. Varney were wanton, willful, and malicious. The Defendants acted willfully and/or with reckless disregard for the state-protected rights of Mr. Varney.

227.    As a direct and proximate result of the Defendants' violations of NY law, Mr. Varney has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

228.    Mr. Varney seeks all damages to which he is entitled, including, but not limited to, reinstatement, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT VIII

**(Failure to Pay Wages in violation of NYLL §§ 191, 193, and 198)**

**Plaintiff v. All Defendants (WH, WES, AND Win Waste NNE)**

229.    Mr. Varney incorporates all paragraphs above and below as if set forth fully herein.

230.    On or around October 24, 2023, the Defendants terminated Mr. Varney in a clearly retaliatory fashion and refused to pay Mr. Varney the remainder for the final week he worked from on or around September 4, 2023 to on or around September 10, 2023, and the final day he worked.

231.    Under N.Y. Comp. Codes R. & Regs. Tit. 12 §§ 142-2.3, an employee who by request or permission of the employer reports for work on any day shall be paid for at least four hours, or the number of hours in the regularly scheduled shift, whichever is less, at the basic minimum hourly wage.

232.    Accordingly, Mr. Varney is entitled to four hours of pay for reporting to work on or around October 24, 2023.

233.    Indeed, as of present, the Defendants have not paid, and Mr. Varney has not received, the remaining pay for the hours he worked.

234.    As a direct and proximate result of the Defendants' acts or omissions, Mr. Varney has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits and interest.

235.    Mr. Varney seeks all damages to which he is entitled, including, but not limited to, unpaid wages, lost compensation and benefits, liquidated damages, interest, attorney fees, and costs.


WHEREFORE, the Plaintiff, Matthew Varney, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay),

D.  Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E.  Award the Plaintiff emotional distress damages;

F.  Award the Plaintiff compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses);

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff punitive damages;

I.  Restore and reinstate the Plaintiff to his employment with full seniority and benefits;

J.  Award the Plaintiff his reasonable attorneys' fees;

K.  Award the Plaintiff interest and costs;

L.  Award the Plaintiff all other damages to which he is entitled; and

M.  Grant such further relief as is just and equitable.

Respectfully Submitted,

MATTHEW VARNEY

By his attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date:   August 5, 2025          By:    /s/ *Katelynne Stockwell*

Katelynne Stockwell
katelynne@wyattlegalservices.com
NY State Bar: 615179
NDNY No.:  706064

Michael R. Varraso
mvarraso@wyattlegalservices.com
NY State Bar: 5619291
NDNY No.: 701795

Benjamin J. Wyatt
BWyatt@Wyattlegalservices.com
NY State Bar: 5604590
NDNY No.: 700752

Main Office:
The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office:
69 State Street, 13th Floor
Albany, NY 12207